IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRIAN M. MATTES,<br>BOP Register No. 10973-052, | §<br>§<br>§ | |
| Plaintiff, | §<br>§ | |
| V. | §<br>§ | No. 3:20-cv-1917-B-BN |
| M.D. CARVAJAL, Director of BOP, ET<br>AL., | §<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Brian M. Mattes, a federal prisoner incarcerated at FCI Seagoville, in

this district, filed a *pro se* complaint against the Director of the Federal Bureau of

Prisons ("BOP") and Seagoville's warden, in their official capacities, and Seagoville's

Sex Offender Management Program ("SOMP") coordinator and an SOMP

psychologist, in their official and individual capacities. *See, e.g.,* Dkt. No. 3 at 7-8.

Mattes's allegations in his initial complaint were extensive and included

constitutional violations based on due process (construed as brought under the Fifth

Amendment), the First Amendment, the Fourth Amendment, and the Eighth

Amendment. *See generally id.*

He also sought injunctive relief and monetary damages. *See id.* at 7, 53-54; *see*

*also* Dkt. No. 9 (motion requesting a temporary restraining order ("TRO") and

preliminary injunction).

And, while most claims concerned the BOP's administration of its SOMP,

Mattes also included claims regarding the COVID-19 pandemic, requesting that the Court order that he be allowed to serve the remainder of his sentence in home confinement. *See, e.g.,* Dkt. No. 3 at 54.

Mattes's case has been referred to the undersigned United States magistrate judge for screening under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Jane J. Boyle.

Previously, the Court, accepting the undersigned's recommendation over Mattes's objections, *see* Dkt. No. 14, denied the motion requesting a TRO or preliminary injunction and dismissed the initial complaint without prejudice to Mattes's filing within 21 an amended complaint that cures, if and where possible, the deficiencies identified by the Court, including that, "to the extent that he refiles claims based on *Bivens[ v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)], he should explain a basis for expanding the *Bivens* remedy to the specific context of each amended claim," *Mattes v. Carvajal*, No. 3:20-cv-1917-B-BN, 2020 WL 5505662 (N.D. Tex. Aug. 13, 2020), *rec. accepted*, 2020 WL 5500270 (N.D. Tex. Sept. 11, 2020).

Mattes has now filed an amended complaint [Dkt. No. 16], again naming as defendants the Director of the BOP, Seagoville's former warden, and Seagoville's current warden (all in their official capacities), as well as Seagoville's former SOMP coordinator and a current SOMP psychologist at Seagoville (both in their official and individual capacities), *see id.* at 3-4. The amended complaint, like Mattes's initial filing, combines claims concerning the BOP's administration of its SOMP (against

defendants named in both capacities), *see, e.g.*, *id.* at 16-39, and its response to the

COVID-19 pandemic (against defendants named in their official capacities), *see, e.g.*,

*id.* at 40-69. And Mattes again seeks monetary damages and requests injunctive relief

and transfer to home confinement (under 28 U.S.C. § 2241). *See id.* at 3.

Because the Court previously explained to Mattes that it lacks the authority

to release him to home confinement, *see Mattes*, 2020 WL 5505662, at *6-*7, the

undersigned enters these findings of fact, conclusions of law, and recommendation

that the Court should construe the amended filing as only asserting civil claims and

dismiss this action with prejudice.

## Legal Standards

As the Court previously explained,

> [u]nder the Prison Litigation Reform Act ("PLRA"), where a prisoner –
> whether he is incarcerated or detained pending trial – seeks relief from
> a governmental entity or employee, a district court must, on initial
> screening, identify cognizable claims or dismiss the complaint, or any
> portion of the complaint, that "is frivolous, malicious, or fails to state a
> claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).
>
> The fails-to-state-a-claim language of this statute – as well as its
> sister statute, Section 1915(e)(2)(B) – "tracks the language of Federal
> Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34
> (5th Cir. 1998) (per curiam).
>
> And "[i]t is well-established that a district court may dismiss a
> complaint on its own motion under [Rule] 12(b)(6) for failure to state a
> claim upon which relief may granted." *Starrett v. U.S. Dep't of Defense*,
> No. 3:18-cv-2851-M-BH, 2018 WL 6069969, at *1 (N.D. Tex. Oct. 30,
> 2018) (citing *Carroll v. Fort James Corp.*, 470 F.3d 1171 (5th Cir. 2006)
> (citing, in turn, *Shawnee Int'l, N.V. v. Hondo Drilling Co.*, 742 F.2d 234,
> 236 (5th Cir. 1984))), *rec. accepted*, 2018 WL 6068991 (N.D. Tex. Nov.
> 20, 2018), *aff'd*, 763 F. App'x 383 (5th Cir.) (per curiam), *cert. denied*,
> 140 S. Ct. 142 (2019).
>
> A district court may exercise its "inherent authority ... to dismiss
> a complaint on its own motion ... 'as long as the procedure employed is
> fair.'" *Gaffney v. State Farm Fire & Cas. Co.*, 294 F. App'x 975, 977 (5th

Cir. 2008) (per curiam) (quoting *Carroll*, 470 F.3d at 1177 (quoting, in turn, *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)); citation omitted). The United States Court of Appeals for Fifth Circuit has "suggested that fairness in this context requires both notice of the court's intention to dismiss *sua sponte* and an opportunity to respond." *Id.* (quoting *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643 (5th Cir. 2007) (quoting, in turn, *Carroll*, 470 F.3d at 1177); internal quotation marks and brackets omitted). These findings, conclusions, and recommendations provides notice, and the period for filing objections to them affords an opportunity to respond. *See, e.g., Starrett*, 2018 WL 6069969, at \*2 (citations omitted)).

Dismissal for failure to state a claim under either Section 1915A(b)(1), Section 1915(e)(2)(B)(ii), or Rule 12(b)(6) "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam)), as neither the PLRA, the IFP statute, nor the Federal Rules of Civil Procedure "countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 574 U.S. at 11.

Instead, plaintiffs need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Id.* at 12 (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* And "[a] claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege

more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

This rationale has even more force here, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)).

But "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

"Ordinarily, 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.'" *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009)). But leave to amend is not required where an amendment would be futile, *i.e.,* "an amended complaint would still 'fail to survive a Rule 12(b)(6) motion," *Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)), or where a plaintiff has already amended his claims, *see Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint." (citation omitted)).

*Mattes*, 2020 WL 5505662, at *1-*3.

## Analysis

Since Mattes brings constitutional claims against five current or BOP officers or employees, this action is brought under *Bivens*.

I.      Official Capacity

Mattes "may bring a *Bivens* action against individual officers for [an] alleged constitutional violation, but he may not bring an action against the United States, the BOP, or BOP officers in their official capacities as such claims are barred by the doctrine of sovereign immunity." *Gibson v. Fed. Bureau of Prisons*, 121 F. App'x 549, 551 (5th Cir. 2004) (per curiam) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71-72 (2001); *Hafer v. Melo*, 502 U.S. 21, 25 (1991)); *see also Multi Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzales*, 474 F. Supp. 2d 1133, 1141 (N.D. Cal. 2007) ("A *Bivens* action does not lie against federal agencies or the United States, which possess sovereign immunity; such actions may be brought only against named federal officers or agents in their personal capacity." (citing *FDIC v. Meyer*, 510 U.S. 471, 483-86 (1994))). Accordingly, the official capacity claims – and thus all claims against Defendants Carvajal, Underwood, and Zook – must be dismissed.

And, to the extent that most of the non-monetary relief Mattes requests, now only from the two remaining Seagoville SOMP employees, appears to be outside each defendant's authority – for example, that "each and every sex offender [be notified] IN WRITING upon arrival at a federal BOP facility [informing] them of what materials and behaviors SOMP staff will consider risk relevant," Dkt. No. 16 at 72 – the claims underlying these requests appear to be official capacity claims that should be dismissed. *Cf. White v. Underwood*, No. 3:18-cv-701-N-BN, 2019 WL 2719353, at *2-*3 (N.D. Tex. May 17, 2019) ("'To determine whether a defendant is being sued in his or her official or individual capacity, [a court should] examine "the allegations in

the complaint," and "the course of proceedings.'" To further this examination, courts

have identified 'several factors' applicable to the screening of a prisoner or *pro se*

complaint, such as whether the plaintiff alleges 'that the defendant acted in

accordance with a governmental policy or custom, or the ... indicia of such a policy or

custom on the face of the complaint,' and 'a plaintiff's request for compensatory or

punitive damages, since such relief is unavailable in official capacity suits.'" (quoting

*Robinson v. Hunt Cnty., Tex.*, 921 F.3d 440, 446 (5th Cir. 2019), then *Batiste v.*

*Layrisson*, No. Civ. A. 04-0607, 2005 WL 840468, at \*2 (E.D. La. Apr. 1, 2005))), *rec.*

*accepted*, 2019 WL 2717154 (N.D. Tex. June 28, 2019); *see also Batise*, 2005 WL

840468, at \*2 (further noting that "the underlying inquiry throughout remains

whether the plaintiff's intention to hold a defendant personally liable can be

ascertained fairly").

## II.   *Bivens* Claims

That Mattes seeks monetary relief under *Bivens* based on alleged

constitutional violations by federal actors raises another – significant – obstacle to

his ability to allege plausible claims given the context of this case. *Bivens*, unlike 42

U.S.C. § 1983 (applicable to state actors), is not a Congressional statute that "entitles

an injured person to money damages if a state official violates his or her

constitutional rights." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) ("Congress did

not create an analogous statute for federal officials. Indeed, in the 100 years leading

up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose

constitutional rights were violated by agents of the Federal Government.").

The United States Supreme Court "has approved of an implied damages remedy under the Constitution itself" only three times – in *Bivens*, to enforce "a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures" in violation of the Fourth Amendment; in *Davis v. Passman*, 442 U.S. 228 (1979), holding "that the Fifth Amendment Due Process Clause gave [a Congressman's administrative assistant] a damages remedy for gender discrimination"; and in *Carlson v. Green*, 446 U.S. 14 (1980), holding "that the Eighth Amendment Cruel and Unusual Punishments Clause gave [a prisoner] a damages remedy for failure to provide adequate medical treatment." *Abassi*, 137 S. Ct. at 1854-55.

In *Abbasi*, the Supreme Court further "stressed that any extension of *Bivens* to new factual scenarios is now a '"disfavored" judicial activity.'" *Maria S. ex rel. EHF v. Garza*, 912 F.3d 778, 783 (5th Cir. 2019) (quoting *Abbasi*, 137 S. Ct. at 1857 (quoting, in turn, *Iqbal*, 556 U.S. at 675)). And so, "there is a two part inquiry for determining whether to allow a *Bivens* cause of action: (1) whether the instant case involves a 'new context' that is distinct from prior *Bivens* cases and (2) whether any 'special factors' preclude extending *Bivens* to this 'new context.'" *Id.* at 784 (quoting *Hernandez v. Mesa*, 885 F.3d 811, 816-18 (5th Cir. 2018) (en banc)); *see also Begay v. Leap*, No. 3:17-cv-2639-N-BT, 2019 WL 1318410, at *2 (N.D. Tex. Feb. 26, 2019) ("Though expanding *Bivens* is now a disfavored judicial activity, the Supreme Court has not foreclosed the possibility. The Supreme Court held that in considering a

request for a new *Bivens* remedy, it first looks to 'whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages,' and second, even if there is no alternative, whether there are 'any special factors counselling hesitation before authorizing a new kind of federal litigation.' The Supreme Court has not defined 'special factors counselling hesitation,' but has noted that they encompass those things that cause a court to hesitate before determining that it 'is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.' Implying new causes of action under the Constitution implicates separation-of-powers concerns such that '[i]n most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability.'" (citations omitted)), *rec. accepted*, 2019 WL 1315901 (N.D. Tex. Mar. 22, 2019).

The Court previously set out these standards for Mattes, *see Mattes*, 2020 WL 5505662, at \*4-\*6, and specifically warned him that, "to the extent that he refiles claims based on *Bivens*, he should explain a basis for expanding the *Bivens* remedy to the specific context of each amended claim," *id.* at \*6. But Mattes's amended complaint fails to make this showing.

### A.   New Context

"The proper test for determining whether a case presents a new *Bivens* context is" whether it is "different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. *Ziglar*, 137 S. Ct. at 1859. A meaningful difference may include the Constitutional right

at issue, the statutory or other legal mandate under which the officer
was operating, or the presence of potential special factors that previous
*Bivens* cases did not consider. *Id.* at 1860. "[E]ven a modest extension is
still an extension." *Id.* at 1864.

*Canada v. United States*, 950 F.3d 299, 307 (5th Cir. 2020) (In sum, "the proper test

is whether the case differs in a meaningful way from *Bivens*, *Davis*, or *Carlson*."

(citing *Ziglar*, 137 S. Ct. at 1859; *Loumiet v. United States*, 948 F.3d 376, 381-82 (D.C.

Cir. 2020))).

Mattes first asserts a conspiracy against civil rights, citing "18 U.S.C. § 240."

Dkt. No. 16 at 4. Sections 241 and 242 of Title 18 are titled Conspiracy Against Rights

and Deprivation of Rights Under Color of Law, but "18 U.S.C. §§ 241 and 242 do not

provide a basis for civil liability." *Gill v. State of Texas*, 153 F. App'x 261, 262 (5th

Cir. 2005) (per curaim) (citing *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir.

1960) ("Appellant seems to argue also that he had no chance in the Texas courts

because of the conspiracy against him. He relies on Sections 1981, 1983, and 1985(2)

and (3) of Title 42 U.S.C.A. and Sections 241, 242, 371, and 1503 of Title 18 U.S.C.

for relief by way of civil damages. The sections of Title 18 may be disregarded in this

suit. They are criminal in nature and provide no civil remedies."); *Ali v. Shabazz*, 8

F.3d 22, 1993 WL 456323, at *1 (5th Cir. Oct. 28, 1993) (per curiam) ("Nothing in

sections 241 or 242 indicates that they are more than 'bare criminal statute[s].' Thus,

the statutes do not provide for a private right of action; and corrective process under

them 'would lie entirely within the discretion of a governmental body, the United

States Department of Justice.'" (citations omitted))).

Next, to the extent that Mattes brings *Bivens* claims based on alleged First

Amendment violations, *see, e.g.*, Dkt. No. 16 at 22-30, those claims must be dismissed. *See, e.g.*, *Houck v. Denham*, No. 15-cv-00894-KMT, 2017 WL 11425592, at \*5 (D. Colo. Mar. 27, 2017) ("With respect to Plaintiff's First Amendment claim, the Supreme Court has refused explicitly to recognize a *Bivens* claim based upon an alleged First Amendment violation." (citing *Iqbal*, 556 U.S. at 675; *Bush v. Lucas*, 462 U.S. 367, 390 (1983))); *see also id.* ("'Conceivably, the Court has not recognized such claims in the context of claims by prison inmates because prisoners may pursue relief under the Federal Tort Claims Act or claims for injunctive relief based on an alleged violation of the First Amendment.'" (citations omitted)); *Begay*, 2019 WL 1318410, at \*5 ("[B]ecause the Supreme Court has not determined that *Bivens* provides a remedy against federal officials for First Amendment violations, and the Supreme Court has cautioned against expanding *Bivens* in new contexts – particularly where, as here, special factors counsel hesitation and a plaintiff has alternative remedies – the Court should dismiss Plaintiff's First Amendment retaliation claim against Defendant.").

Mattes's remaining constitutional claims – under the Fourth and Eighth Amendments and the Fifth Amendment Due Process Clause, *see, e.g.*, Dkt. No. 16 at 4-22, 30-39 – may touch on constitutional rights under which a *Bivens* action has been allowed, but his claims qualify as new contexts, as they meaningfully differ from *Bivens*, *Davis*, and *Carlson. See, e.g., Canada*, 950 F.3d at 307 ("Canada contends that the Supreme Court recognized a *Bivens* claim for Fifth Amendment Due Process violations in *Davis*, and thus his claims do not present a new Constitutional context. His reliance on *Davis* is misplaced. The Supreme Court has made clear that claims

for violations of Fifth Amendment rights can still be brought in a new context. To be sure, '[n]o one thinks *Davis* – which permitted a congressional employee to sue for unlawful termination in violation of the Due Process Clause – means the entirety of the Fifth Amendment's Due Process Clause is fair game in a *Bivens* action.'" (quoting *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019); citations omitted)).

## B.    Special Factors

Here, the administration of the federal prison system, particularly its institutional efforts to treat convicted sex offenders, qualifies as a special factor that should prevent the Court's creating an implied cause of action under *Bivens* for the contexts presented by this case.

> "[A] *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). A special factor is a sound reason to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong. *Id.* at 1858. The court's focus is on maintaining the separation of powers: "separation-of-powers principles are or should be center to the analysis." *Hernandez*, 885 F.3d at 818 (quoting *Ziglar*, 137 S. Ct. at 1857). The only relevant threshold – that a factor "counsels hesitation" – is remarkably low. *See id.* at 822. If any special factors do exist, then "'courts must refrain from creating'" an implied cause of action in that case. *Maria S.*, 912 F.3d at 784 (quoting *Ziglar*, 137 S. Ct. at 1858).

*Canada*, 950 F.3d at 309 (footnote omitted); *see also Ziglar*, 137 S. Ct. at 1857-58 (observing that a court's special factors inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed"); *Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2019 WL 5653444, at *3 (D. Ariz. Oct. 31, 2019) ("This requires courts to assess the impact on governmental operations systemwide,

including 'the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself.'" (quoting *Ziglar*, 137 S. Ct. at 1858)).

As the district court in *Smith v. Shartle* observed,

"Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new *Bivens* claim." Congress passed the [PLRA], which "suggests that Congress does not want a damages remedy, which is itself a factor counseling hesitation." Indeed, the Supreme Court noted:

> Some 15 years after *Carlson* was decided, Congress passed the [PLRA] of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs.... [T]he Act itself does not provide for standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Ziglar*, 137 S. Ct. at 1865 (citation omitted).

*Smith v. Shartle*, 2019 WL 5653444, at *4 (citations and footnote omitted); *see also id.* *4 n.1 (As "the PLRA is not a right to relief itself, but rather a limit on when inmates may raise federal claims," "the PLRA prohibits a federal damages remedy when alternate remedies – such as an administrative grievance, habeas corpus, or an injunction – are available to prisoners." (citations omitted)).

The *Bivens* claims that Mattes asserts should therefore be dismissed.

## Recommendation

The Court should dismiss Plaintiff Brian M. Mattes's claims with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 2, 2020

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE